May it please the court and counsel, my name is Pete Chueda and I represent Rudy Garcia in this matter. We would submit that instruction number 17, the involuntary manslaughter instruction as given by the court, was erroneous. It failed to recognize or require the jury to find the two essential elements that were recognized in this circuit in United States v. Keith in 1979. It requires an analysis of the two essential elements that were recognized in Keith. The first one is that Keith recognized that in order to find someone guilty of involuntary manslaughter, the act had to be done with gross negligence, which is defined as wanton and reckless disregard for human life. In this case, the jury instruction permitted the jury to find that the defendant committed an act done either in an unlawful manner or with wanton and reckless disregard for human life. So it gave the jury the ability to totally disregard the quality of the act, the reckless character of the act. The fourth element is that the defendant either knew that such conduct was a threat to the lives of others or knew of circumstances that would reasonably cause the defendant to foresee that such conduct might be a threat to the lives of others. So, again, we have the same problem here as the or. If the jury could disregard the element that the defendant knew that the conduct was a threat to the others, all they had to find was that he knew of circumstances that would reasonably cause the defendant to foresee that such conduct might be a threat to the lives of others. And I would submit that that is a civil standard. If you look at it, it's knew of circumstances that would reasonably cause someone. And that's a civil standard. That's the reasonable man standard. Foreseeability is the standard in the civil law for determining whether a duty is owed and might be. The use of the word might is very interesting in that it isn't even more probable than not. It just has to possibly be a threat to the life of others. So in effect, the jury was allowed to find Mr. Garcia guilty of involuntary manslaughter if he didn't act unlawfully, which is not defined, what an unlawful act would be, and knew of circumstances that reasonably caused him to foresee that it might be a threat to the lives of others. The whole purpose of. . . Can I ask a question? Sure. I mean, we've got the Ninth Circuit Model jury instruction that has as its first element, first the defendant committed an act with wanton or reckless disregard for human life. That's right there in front of the district judge. Why wasn't that given? Well, he did give the second alternative of the Ninth Circuit Model jury instruction. I see. So I'm reading one of the two alternatives. Well, correct, Your Honor. And I guess if you look at the involuntary manslaughter statute, it sets forth three different possible ways of committing involuntary manslaughter. And basically what the U.S. v. Keith and all the cases that talk about this involuntary manslaughter, they've indicated we have to put a gloss onto the statute to make it constitutional. And so the problem with the model instruction is that it substituted the concept of the alternative concept of due caution and circumspection. And it took that out and put the Keith essential element in, but the model instruction still allows it to be either or. I see what's going on. And so it allowed the jury to find Mr. Garcia guilty on a totally civil standard. So if we were to agree with you, we really have to say that our model jury instruction is wrong? Yes. Okay. No question. No, we've done it before. I don't really like doing it, but we have done that. The next issue that I wanted to address is the issue of – rejection or the prohibition against Mr. Garcia testifying about his own experiences with the victim. Yes, Your Honor. Please, I would like to go to that next. What was the purpose or what was the court told was the purpose of having him testify? Well, it was to show his fear, his subjective fear of Mr. McCraggy, the person that passed away in this altercation. He died, actually. Yes. He was killed. Correct. He was shot. He was shot. There's no question about that. But Mr. McCraggy, he had a reputation for violence. We were able to bring that general subject out, but we weren't able to go into specific acts of misconduct, and they would have been – this incident took place in November of 2009, and the instances that we wanted to present to the jury was Mr. Garcia and Jordan Lynn would also have testified that Mr. McCraggy was involved in May of 2009 where Joaquin Gariby came over to pay a drug debt. They got – he got into a fight – Mr. Gariby got into a fight with Mike Lazard, who was there, a friend of David McCraggy's. Mike Lazard started to lose the fight, and so David McCraggy entered the fight along with some others that were there and caused permanent brain damage to Mr. Gariby. The second incident was in July of 2009. You're kind of confusing me. There was Garcia's testimony about his experience and knowledge, and then there was Jordan Lynn. Was he offered as a precipient witness to the same events that Garcia experienced, or was he proffered as someone who had similar experience and knowledge simply to corroborate McCraggy's violent behavior? Well, actually, Mr. Garcia was not present at any of these instances. Okay. And Jordan Lynn is a woman, and she was neither. She was not present at any of these instances. The reason they were brought up is because of the United States versus James decision in this circuit. It's an embanked decision that basically held that police reports of violence by the victim in that case and 38 bringing out in a pre-sentence report that the victim had 38 prior arrests and just police reports were admissible to show that the defendant in the James case was fearful of to corroborate the fear that the victim had of the victim. Okay. Just to clarify, did Garcia know about these prior incidents? Yes. Even if he wasn't present at them? Correct. He knew of them. And was Jordan, was her evidence about the same kinds of, the same incidents that Garcia knew about? Correct. And her evidence. So she would have been corroborated? Correct, Your Honor. And that was the explicit basis that the court was told was the purpose? Yes, Your Honor. Okay, thank you. The second incident was where Josh Fink was, he lived two houses away from where this very incident in the Garcia case took place, was walking by the house and David McCraggy shot him and someone else, a juvenile, took the blame for it because it was known on the reservation that the United States Attorney's Office wouldn't be, was very reluctant to bring any cases against juveniles. And the third incident was where Mr. McCraggy took a board from a burning fire and burned a person of Hispanic origin. The final issue is the sentencing issue. We would submit that because of the jury instruction, if this court approves that jury instruction and affirms the guilty finding by the jury, that the proper standard would have been criminal negligence, which would have yielded a base offense level of 12 instead of recklessness, which has a base level offense of 18 under 2A1.4 of the guidelines, for the reasons I've already stated. And we believe that Mr. Garcia should have been given acceptance of responsibility under 3E1.1 because he was, I mean, he faced a charge of first degree murder and it was the government's theory all the way through this trial that Mr. Garcia was guilty of first degree murder, even in their closing arguments. And in effect, Mr. Garcia admitted all the facts that the jury could have relied on to come to involuntary manslaughter. He admitted that he had a loaded rifle, that he shot it twice in the air, and that during a struggle with Mr. McCraggy, the gun went off, which caused the fatal blast. So he didn't really have any alternative under the circumstances of this case. And with all of those admissions, he should have been given acceptance of responsibility. The Court ---- Well, I think I'm inclined to agree with you, Amy, at the end. But he, of course, didn't admit that he was guilty even of involuntary manslaughter. He admitted to having shot it in the air. He admitted that the gun went off in a struggle. But his version of it was that this was not involuntary manslaughter. Correct. I agree. But you have to remember that we're talking about you explain the law to the jury and then they apply the facts to the law. A jury could reasonably, if they had been properly instructed, found Mr. Garcia not guilty. Of course, that's true. I mean, that's your first argument. Sure, sure, sure. The Court used the use of a weapon and increased his sentence from 31 to 41 months to seven years. And we would submit that that was unreasonable in view of the victim characteristics, which is 5K2.10. Mr. McCraggy was a lot taller and a lot bigger. He was persistent. Mr. Garcia was fending off a fight not only from the larger man but two other people that were coming after him. He perceived this danger, and the Court disregarded that. Your Honors, I would like to reserve the rest of my time. Why don't we hear from the government? Can I just ask one quick question? Sure. What is the significance to you of the fact that the victim was on an Internet site with a firearm? Oh, yes, please. And that would be the same. I thought maybe you forgot that. Yes, I did forget that. And that's, again, the same analysis under U.S. v. James, that this corroborates not only the fear but it corroborates the fact that a big disputed issue in the case was whether Mr. McCraggy had a pistol in his hand. And we had evidence that he did, and there was witnesses that testified that he didn't. It would have corroborated that and thereby corroborated the fear. I thought he had a rifle or a shotgun in there. My client had the rifle. No, but in the Internet. I'm sorry, in the. . . Oh, in the. . . Yes, it was a sawed-off shotgun. I'm sorry. It didn't show him with a pistol. No, it showed him with a sawed-off shotgun. The thing is that three of his cousins. . . Go ahead. I'm sorry. Well, I mean, those are different weapons, so what would it have been proving? Well, they're both firearms. Three of the witnesses, three of Mr. McCraggy's cousins, testified for the government that they had never seen Mr. McCraggy with a firearm at all, ever. So basically it's impeachment evidence. Yes, Your Honor. Okay. Why don't we hear from the government and we'll give you a chance to respond. Good morning, Your Honors. May it please the Court and Counsel, my name is Matt Duggan. I represent the plaintiff in this matter. Your Honor, I'd like to start off with the jury instruction. Meaning the government? I'm sorry, Your Honor? Meaning the government? Yes, Your Honor. Okay. I hear you all refer to them as the government, so I thought we suddenly moved into a civil case. No, Your Honor. Your Honor, I'd like to start first with the jury instruction. And the Court is correct in that the jury instruction that was given in this case does follow criminal model jury instruction for the Ninth Circuit, 8.110. And it's important to note that that model jury instruction also tracks the statute in this case. But the statute, of course, has a gloss. That's correct, Your Honor. Does it track the gloss? Pardon me? Does the jury instruction given track the gloss? Your Honor, I think what's different in this case are the cases that . . . The answer is yes or no, and then you can talk. Okay. Does the jury instruction actually given track the gloss that we've given to the statute? I think it does, Your Honor. And the reason that I think it does is because when you look at that fourth element, I think that is where we get into the issue of gross negligence. So I'm reading the fourth element, and you can read it to me, and you can tell me where it says gross negligence. It does not say gross negligence. Okay. What does it say that's the equivalent of it? Your Honor, it says the defendant either knew that such conduct was a threat to the lives of others or knew of circumstances that would reasonably cause the defendant to foresee that such conduct might be a threat to the lives of others. Yeah, right. And when we look at the definition of gross negligence, it's a wanton or reckless disregard for human life. That's right. Number four doesn't strike me as coming very close to that. Meaning it says conduct was a threat. It doesn't say what degree of threat. I mean, there are lots and lots of threats. There are. And after the or clause, reasonably cause foreseen might be a threat. Again, it doesn't tell us what kind of threat. It doesn't tell us what degree of chance, might. Gross negligence, if I'm trying to express the concept of gross negligence or reckless disregard and I write this, I don't think I've done a very good job. Do you have anything else that tells us what in the jury instructions given come close to saying gross negligence or reckless disregard? No, Your Honor. It's the government's contention that that fourth element is what constitutes gross negligence. Your Honor, what is also different about some of the cases that have been cited are, one, in the U.S. Crow case, 563 F3rd 969, the court actually used a very similar instruction that was used in this case, and it gave the different alternatives using the word or before each of the elements. And the court went on to say the difference between voluntary  And if the government failed to convince the jury that the defendant acted with intent or recklessly, the jury could nonetheless find the defendant attempted to use non-deadly force and self-defense, but did so with wanton disregard for human life. Your Honor, in the Huggs case, we also dealt with some- I've got Crow here in front of me. What language in Crow gets you to the point where it's approved in instruction close enough to this that we should regard Crow as controlling? Let me have just a moment, Your Honor. No, no, take your time. Your Honor, I'm looking at Crow on page 975, okay, just where 975 starts,  that involuntary manslaughter required proof that Crow committed an unlawful act not amounting to a felony or committed a lawful act done in either an unlawful manner or with wanton or reckless disregard for human life which must produce death or might produce death. I'm sorry, Your Honor. And what was at issue in Crow? Was the issue intent or was the issue degree of danger? Your Honor, there were three issues in Crow. One was the defendant's claim of self-defense and giving of the lesser included instruction, and I think that's where that lines up with what we're dealing with in this case. Is it your view then that if we want to hold for the defendant in this case, we would have to go en banc to avoid the consequence of Crow? Your Honor, I don't think so, and the reason I don't think the court would necessarily need to do that is because I think the facts that are in each of these cases, namely Crow and Keith, are distinguishable enough that it doesn't require the court to reverse the holding or change its holding in those other cases. So if we were to disagree with you and to say that something, the reckless disregard has to be expressed fairly clearly at the end of the instruction, you don't think that we have to go en banc to get out from under Crow? I don't, Your Honor. Okay. Your Honor, the other case that I wanted to briefly distinguish was the Huggs case that is cited. In that case, the main issue that is different than what we deal with here was the indictment did not match up with what the jury instruction read. So it's a difference of the notice that was given to the defendant in that case. In the Garcia case, what we have is a lesser included offense. We're not dealing with as much a notice issue from the indictment. In the Huggs case, the indictment basically said the defendant committed an unlawful act not amounting to a felony. The court then went on to instruct the jury on different prongs that were in addition to that single element that was charged in the indictment.  Your Honor, also speaking of the Keith case, the Keith case is different because it used the words in the instruction, without due caution and circumspection. And what the court held in Keith was because that standard was included in that jury instruction that the jury was actually given a lower standard in that case. Your Honor, in the present case, Mr. Garcia, there was no lower burden or no lower standard than that of gross negligence given. Your Honor, finally on that topic, if the court does find that it's error, the court must also find that it seriously affected the integrity or public reputation of the judicial proceedings requiring correction of the issue. Why does that standard apply? Your Honor, because the court can use its discretion in order to create a fix for what it believes is wrong in this case. Just because the court finds that there is an error, the second prong is for the court to move on and find out that it seriously affected the fairness or integrity of the trial and it must be fixed. That's the standard for harmless error for an erroneous jury instruction? Yes. I'll have to check. I did not think the standard was so high. That more sounds like a plain error standard to me. But I can check. Your Honor, next is specific instances of violent acts of the victim. Your Honor, the standard in this situation is abuse of discretion, and the reason it's abuse of discretion is because the court at the trial level engaged in a balancing act to determine whether or not there was unfair prejudice compared to the probative value of this evidence. And as Mr. Schweda indicated, Mr. Garcia and Ms. Lynn knew of these instances, but there was no other corroborating evidence that the defendant could show that would back up these allegations of the victim. So you're saying they didn't have enough evidence that this was so? Your Honor, they didn't have enough evidence and they couldn't point to anything that would corroborate their claims. And because the judge allowed evidence of the character or reputation for violence, there was no need for the defendant to go into the specific acts of violence. Now, this is a tricky one because if this evidence were being introduced to show the character of Mr. McCraggy in a case where Mr. McCraggy, for example, were a defendant, I might be quite inclined to sustain any judge who keeps it out. But his character in that sense is not at issue. It's the degree of fear that Mr. Garcia might have felt. Correct. In one sense, it's almost, although not quite, irrelevant as to whether it's true that Mr. McCraggy did these three things. The centerpiece is, did Mr. Garcia have a reasonable basis to think it was true? Because we're talking about his state of mind and how fearful he might have been. You're right, Your Honor. So could you help me understand why, if that's the way we're looking at it, the judge acted properly in excluding Mr. Garcia's statement, well, I knew about these three things and they contributed to why I was so afraid. Yes, Your Honor, and that comes back into this balancing act of the probative value versus the prejudice. It would have been probative to a certain degree, but the judge felt that the prejudice far outweighed the probative value in this case. Tell me about the prejudice. Well, Your Honor, the prejudice that when the jury hears about David McCraggy being involved in these three incidents, which could not be supported, there's a tendency for the jury. They were supported by the other witness. I recognize that neither of the two witnesses was eyewitness to the events. I understand the weakness of the evidence. Okay. Okay. So my position on that is that the prejudice to the jury is that they are going to hear about these separate violent acts, even if they were true or even if they were just in the state of the defendant's mind, and they are going to attach too much weight on those acts toward the victim and put him in a light where he can't come back in and defend against himself, and the government is put in the position of trying to disprove a negative. What the court did allow is, and the government's position is, that Mr. Garcia may have even gone into those specific acts when he testified that he had seen David McCraggy in fights before and he had known him. So he didn't go into each of the details of those separate incidents, but he was allowed to testify, even after the court ruled, that he knew of what this person had been up to as far as his fighting background. So I think through that evidence, the defendant's concern is alleviated because he basically got in what he was looking to get in. Okay. And maybe you can address also the Internet pictures. Yes. Thank you, Your Honor. Your Honor, the Internet pictures, the defense sought to admit those to show motive, opportunity, or plan, and as the court has seen, the photo is a picture of David McCraggy standing in a sports uniform holding a firearm. And the nature of the firearm? It's a sawed-off shotgun, Your Honor. So not just an ordinary sporting shotgun, but a shotgun that's, I don't know whether it's illegal in the state of Washington, is it? I don't know that there was ever determination made that it was an illegal firearm, Your Honor. But a sawed-off shotgun is different from a shotgun you use to shoot birds. It is. It is, Your Honor. It's illegal under federal law anyway. Yes. And, Your Honor, what that picture does not show is how that would have created any kind of motive or opportunity or lack of mistake for the defendant in this case. The problem with that argument is didn't the prosecutor bring out the issue, have you ever seen McCraggy with a firearm? And the answer was no. Now, if you bring that issue out, can't you say, hey, there's McCraggy with a firearm? Well, I think you can as far as impeachment, Your Honor, but this was being sought to introduce motive or intent in this crime, and that picture does not show any type of motive or intent. No, but it contradicts an issue that you wanted to bring out. We've never seen the guy with a firearm. Right. And the evidence ---- Here's a picture of him. Understood, Your Honor. I mean, doesn't it contradict, impeach your witnesses at least? Well, I don't think ---- Not your witnesses so much, but it brings out facts contradictory to what you brought out. Right. And the issue that I was focusing on in that trial was whether these individuals had ever seen David McCraggy with a gun at any point in time previous to this night or during this actual incident. And those witnesses said they had not seen David McCraggy with a gun. The fact that there's a picture of David McCraggy with a gun doesn't really mean that those witnesses were not being truthful or that they lied. It just means ---- I totally agree with that. But the point you're trying to bring out in that perhaps subtly and perhaps obliquely is, no, David McCraggy doesn't have a gun. Otherwise, why would you ask the question? David McCraggy never had a gun. That's not what they said. I understand. They've never seen him. These are his closest friends. Right. So why did you bring it up? Well, the reason I brought it out, Your Honor, is because the defense had alleged that David McCraggy had a gun that evening, and the United States position was that there was no evidence to support that. So I asked these witnesses to see if they would, in fact, say that they had seen him with a gun or not. But you didn't limit it to that evening, did you? I did not limit it to that evening, Your Honor. Okay. And you maintained that there was insufficient evidence that he had a pistol? There was some evidence from that little text that was sent by mistake to the girl. Well, there was a witness, too, that said he had a pistol. There was some evidence presented by the defense to that effect, Your Honor, and there were some text messages that we weren't able to determine who actually sent those but actually just which phone they came from and which phone they went to. So there was real evidence that he had a pistol? There was testimony that someone saw him with a pistol. That sounds like evidence. Yes. Yes. Which may or may not be believed. Right. But that's evidence. Right. Your Honor, lastly, with my last few seconds, I'd just like to deal a little bit with the sentence. I see my time is up. Can I continue that, or would the Court like to? I think we're okay on the second question, unless the bench has any questions. None. All right. Thank you, Your Honor. Thank you. The Crow case had a totally different issue. In Crow, the defendant pushed the victim and then hit with a fist, and the defendant grabbed a knife and then struck the victim. The defendant was a woman, struck the defendant with a knife and caused the death. The district court, sua sponte, instructed on involuntary manslaughter, and the defendant maintained that involuntary manslaughter was inconsistent with self-defense and, therefore, the instruction should not have been given. The circuit held that there was no error. The defendant could use non-deadly force in a criminally negligent way, and, therefore, they weren't inconsistent. It never reached the issue here, but it does acknowledge Keith. It quotes Keith on both the elements that I am putting forward to this Court, and it says before it uses the word involuntary manslaughter requires these elements. And so I guess the issue here is, does this circuit require for conviction of involuntary manslaughter, the two elements, the two essential elements that were recognized by Keith as putting gloss on the statute to make it constitutional? I think, in a way, you got what you wanted. But when the government says we don't need to go on bonk to rule or avoid the effect of parole if we were to conclude that gross negligence is required explicitly in the instruction. We have 30 more seconds. I wanted to, on the MySpace pictures, you have to remember that this isn't just a picture that we found with him with a sawed-off shotgun. This is his Internet website. This is, if you, this was, I'm David McCreggie, and here's my, it's kind of like Facebook. It's the same kind of idea. This is me, and he posts numerous pictures of him with a sawed-off shotgun on it, and then here his relatives, his cousins come into court and say they have never seen him with a firearm. And I would submit that not only for the impeachment purposes, but also to show that Mr. Garcia's fear that it was a legitimate fear, that he's standing here with a gun, that people dispute that McCreggie has a gun, that that all corroborates his fear under the circumstances. Thank you. Thank you. Thank both sides for their argument. Yes, thank you. The case of United States v. Garcia is now submitted for decision.
judges: Quist, Fletcher, Fisher